## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

JAMES D. LEE,                              :

     Plaintiff,                        :
                                   Case No. 3:14cv00291

 vs.                                       :

                                     District Judge Walter Herbert Rice
CAROLYN W. COLVIN,                         :    Chief Magistrate Judge Sharon L. Ovington
Commissioner of the Social
Security Administration,                   :

     Defendant.                        :

---

## REPORT AND RECOMMENDATIONS[1]

---

### I.    __Introduction__

Plaintiff James D. Lee brings this case challenging the Social Security Administration's denial of his application for Disability Insurance Benefits.  He asserts here, as he did before the administration, that he has been under a benefits-qualifying disability – starting on May 1, 2011 – due to upper and lower back pain, scoliosis, numbness in his hand and other places, a back injury, arthritis, depression, anxiety, lack of strength, and obsessive compulsive disorder.  (Doc. #6, *PageID* #s 197-98, 243).

After various administrative proceedings, Administrative Law Judge (ALJ) Elizabeth A. Motta, denied Plaintiff's application based on her conclusion that Plaintiff's

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

impairments did not constitute a "disability" within the meaning of the Social Security

Act.  Following denial by the Appeals Council, Plaintiff commenced this action under 42

U.S.C. §405(g).

The case is presently before the Court upon Plaintiff's Statement of Errors (Doc.

#9), the Commissioner's Memorandum in Opposition (Doc. #12), Plaintiff's Reply (Doc.

#13), the administrative record (Doc. #6), and the record as a whole.

**II.     Background**

**A.     Plaintiff's Profile and Testimony**

Plaintiff was 41 years old on his alleged disability onset date, placing him in the

category of a "younger person" for purposes of resolving his application for benefits.  *See*

20 C.F.R. § 404.1563(c).  He obtained a GED and is considered to have at least a high

school education.  He also had training in welding.  His past employment has involved

work as a janitor and injection molding machine operator.

At his administrative hearing on March 18, 2013, Plaintiff testified that he lives

with his wife and 19-year-old son.  Plaintiff testified that he drives "as needed."  (Doc. #6,

*PageID#* 66).  If he drives for a long time, his leg goes numb and he is unable to

walk for a few minutes.

Plaintiff last worked at Delphi as a janitor in factory services.  There were days in

this job when he was "hurting."  *Id*. at 79.  He stopped working when the local Delphi

plant closed (in 2008).  *Id*. at 67.  He tried working as a handyman in 2011, but "it didn't

work out" due pain in his arm, leg, and neck, along with numbness in his thumb and

finger. *Id*. at 67-68.

Plaintiff's neck problems began in 2003/2004 time period. He had a hernia at that time and noticed that anytime he "did anything physical," if he exerted himself, his hernia would bulge. He started getting pain in his arm, leg, and neck. *Id*. at 68. Plaintiff described his pain as shooting from his spine into his arms and legs. It was worse on his right side. *Id*. at 80. He also has numbness in the fingers of his right hand. *Id*. at 69.

Plaintiff explained that Dr. Taha recommended he undergo a fusion surgery for his neck. Dr. Taha told him, however, that even with surgery, he would "never be able to do physical labor again." *Id*. at 70. Plaintiff also testified that he was scared to have a spinal fusion because he knows people who have had fusions which made them worse. He also noted that he was uncertain who could take care of him after having such surgery.

Plaintiff also testified to problems in his mid-to-low back, which radiated to his right leg and arm. He explained that if he takes medication, he can lift a bag of groceries if he "strain[s]" himself. *Id*. at 77. He estimated that he can lift about five or ten pounds. *Id*. at 77. He noted there are days when he does "too much, walk too much or bend - - bending over really bothers me." *Id*. at 71. He estimated that he could stand for ten to fifteen minutes at a time but would likely "pay for it the next day." *Id*. at 72. He further testified that the most comfortable position for him is sitting with his knees bent up again a counter or a wall. He spends approximately three to five hours every day elevating his legs. *Id*. at 85-86.

As to his daily activities, Plaintiff testified that he uses the microwave and can

3

stand and wash dishes if there are only a few of them. *Id*. at 72. He estimated he can stand for ten to fifteen minutes, if he is able to move around or lean back. He has tried to vacuum a few times but it does not go well due to the pushing and leaning. *Id*. at 72-73. He has tried to mow his lawn but cannot do it for a long period of time before his leg goes numb and the pressure builds up in his spine. *Id.* at 73. He spends most of his day watching television. *Id*. at 75.

Plaintiff testified that he goes to the grocery store with his mother, because she is elderly, or with his son. He testified that he feels comfortable going places with his son, but has "always had a nerve problem since I was a kid. I had trauma...." *Id*. at 73-74. He was "jumped when [he] was a kid .... and [he] just [doesn't] trust people." *Id*. at 76. He testified he never goes to his sons activities and has never gone to places (e.g., church, clubs, etc.) on a regular basis. *Id*. at 74. Sometimes, he does not want to talk to anyone, even his wife and children. *Id*. And he does not like to be around crowds. *Id*. at 76.

Plaintiff acknowledged that he has problems with irritability and anger. *Id*. at 84. He dreads answering the phone when it rings because he believes something bad has happened. But, if he does not answer the phone when it rings, he feels like he missed something important. *Id*. at 87. He is also forgetful, particularly when under stress. *Id*. at 81. He feels worthless, lacks an appetite, and has trouble sleeping. *Id*. Concentration is also a problem. He often gets lost when watching a television program. *Id*. at 88. He experiences panic attacks a couple times each week where he feels pressure in his chest and loses track of what is happening around him. *Id*. at 84. He has had suicidal thoughts,

4

although his medication has helped.  *Id*. at 81-82.  When his physical pain is worse, his emotional problems increase.  *Id*. at 84-85.

> **B.**    **Medical Evidence**

The administrative record contains many medical records plus opinions from treating and non-treating medical sources.  A detailed description of those records and opinions is unnecessary because the undersigned has reviewed the entire administrative record and because the ALJ and counsel for the respective parties have discussed the relevant records concerning Plaintiff's physical and mental impairments with citations to specific evidence.

## III.    "Disability" Defined and the ALJ's Decision

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements.  *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1)(D).  The term "disability" – as defined by the Social Security Act – has specialized meaning of limited scope.  It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job – *i.e.,* "substantial gainful activity."[2]  42 U.S.C. § 423(d)(1)(A); *see Bowen*, 476 U.S. at 469-70.

To determine whether Plaintiff was under a benefits-qualifying disability, ALJ

---

[2] In addition, the impairment must be one "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Motta applied the Social Security Administration's five-step sequential evaluation procedure.  *See* 20 C.F.R. § 404.1520(a)(4).  The ALJ's more pertinent findings arose at steps two through five.

At step two, the ALJ concluded that Plaintiff had the severe impairments of lumbar degenerative disc disease; cervical degenerative disc disease; and affective disorder with features of anxiety and depression.  *Id*. at 45.

At step three, the ALJ concluded that Plaintiff's impairments or combination of impairments did not meet or equal the criteria in the Commissioner's Listing of Impairments, including Listings 1.04 and 12.04.  *Id*. at 46.

At step four, the ALJ concluded that the most Plaintiff could do in a work environment despite his impairments, *i.e*., his residual functional capacity, consisted of the following:

> [Plaintiff] has the residual functional capacity to perform light work ... subject to the following limitations: lifting up to [twenty] pounds occasionally and [ten] pounds frequently; standing/walking limited to combined total of four hours out of an eight hour workday; no climbing ropes, ladders or scaffolds; no exposure to hazards, such as moving or dangerous machinery or working at unprotected heights; no exposure to vibration; only occasional postural activities, such as climbing stairs/ramps, balancing, stooping, kneeling, crouching and crawling; only occasional reaching overhead bilaterally but reaching in other directions limited to frequently; no exposure to extreme cold; simple, repetitive tasks; low stress work with no strict production quotas or fast-paced work and only routine work with few changes in the work setting; and only occasional contact with the public, coworkers and supervisors.

*Id*. at 48.  The ALJ also concluded at step four that Plaintiff could not perform his past relevant work.  *Id*. at 52.

6

The ALJ found at step 5 that there are a significant number of jobs available in the national economy that Plaintiff can perform. The sum and substance of the ALJ's sequential evaluation ultimately led her to conclude that Plaintiff was not under a benefits-qualifying disability from May 1, 2011, through the date of the decision.

## IV. <u>Judicial Review</u>

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance.... " *Rogers*, 486 F.3d at 241; *see Gentry*, 741 F.3d at 722.

The second line of judicial inquiry – reviewing for correctness the ALJ's legal criteria – may result in reversal even when the record contains substantial evidence

supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746.

## V.    Discussion

Plaintiff argues that the ALJ's reasons for discounting his treating primary care physician's opinions are flawed, unsupported, or unreasonable.  Plaintiff further argues that the ALJ's findings with regard to the opinion of his treating nurse practitioner,  Misty McDowell, are unreasonable.

The Commissioner contends, "The ALJ complied with the law by providing by providing 'good reasons' for discounting Dr. Fromist's [sic; meaning, Dr. Fronista's] unsupported assessment, and Nurse McDowell's non-medical opinion, and giving more weight to the opinions of the state agency reviewing physicians's [sic] assessments as well as the consultive examination preformed [sic] by Dr. Kramer."  (Doc. #12, *PageID* #724).

Social Security Regulations require ALJs to weigh acceptable medical source opinions by first considering their status on a relationship hierarchy, then by weighing the opinions on "progressively more rigorous tests ... as the ties between the source of the opinion and the individual become weaker...."  Soc. Sec. Ruling 96-6p, 1996 WL 374180, *2; *see Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013).

At its apex, the hierarchy requires ALJs to "[g]enerally, ... give more weight to opinions from [the applicant's] treating sources ...."  20 C.F.R. §404.1527(c)(2).  One level down on the hierarchy finds the opinions of examining physicians and psychologists. Here, the regulations state, "Generally, we give more weight to the opinion of a source

8

who has examined you [the applicant] than to the opinion of a source who has not examined you." *Id.* at §404.1527(c)(1). Resting on the bottom level of the hierarchy are the opinions of non-examining physicians and psychologists, *id.* at §404.1527(e), including state-agency physicians and psychologists. Despite their lowly hierarchical position, state-agency physicians and psychologists are considered "experts in the Social Security disability programs ...," and their opinions "may be entitled to greater weight than the opinions of treating or examining sources." Soc. Sec. Rul. 96-6p, 1996 WL 374180, *2, *3 (July 6, 1996).

Returning to treating medical sources, their opinions might be entitled to controlling weight under the treating physician rule. This occurs only when the treating source's opinion is both well supported by medically acceptable data and not inconsistent with other substantial evidence of record. *Gayheart*, 710 F.3d at 376; *see* 20 C.F.R. §404.1527(c)(2). If the ALJ "does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence." *Gayheart*, 710 F.3d at 376.

Unlike treating physicians, "opinions from nontreating and nonexamining sources are never assessed for 'controlling weight.' The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed

9

controlling.  Other facts 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion."  *Id.*; *see* 20 C.F.R. §§ 404.1527(c)(3)-(6).

Plaintiff's treating primary-care physician, Dr. Fronista, provided his opinions in October 2012.  (Doc. #6, *PageID* #s 445-47).  He has treated Plaintiff since at least January 2004 and throughout the alleged period of disability.  *See id.* at 326-32, 351-56, 462-87, 606-07.  Dr. Fronista's diagnoses for Plaintiff have included spinal stenosis, spinal spondylosis, and anxiety.  *See id.* at 328-31, 351-56, 462-69.  He has treated Plaintiff's pain and his mental-health difficulties, prescribing medications including Vicodin, Soma, and Xanax.  *See id*. at 328-31, 351-56, 462-69, 606-07.  Dr. Fronista's records recount Plaintiff's reports of back pain and anxiety throughout the relevant period.  *See id*. at 329, 353, 356, 607.  The record, moreover, contains treatment notes from Dr. Fronista dating back to January 2004.  *See id*. at 326-32, 351-56, 462-87, 606-07.  Dr. Fronista is also listed as the requesting provider on the reports concerning Plaintiff's objective medical imaging.

Dr. Fronista opined in October 2012 that Plaintiff could lift five pounds on an occasional basis and no weight frequently.  *Id*. at 446. He further opined that Plaintiff could stand for fifteen minutes at a time, sit for fifteen minutes at a time, and work for one hour per work day.  *Id*.  Dr. Fronista believed that Plaintiff's anxiety and depression markedly limited his ability to withstand the stresses and pressures of ordinary work activity.  *Id*.  And, according to Dr. Fronista, Plaintiff's psychological problems aggravate

10

or exacerbate his experience of pain.

> The ALJ rejected Dr. Fronista's opinions as follows:
>
> In October 2012, Dr. Harry Fronista, a family doctor, concluded that Plaintiff was disabled and unemployable.  No controlling or deferential weight will be given to this opinion.  Dr. Fronista provided minimal objective support for his opinion.  Furthermore, the limitations given by Dr. Fronista are not consistent with the claimant's activities of daily living nor are they consistent with the minimal amount of treatment he has received for his back condition.

*Id*. at 51.

This limited paragraph is problematic because it fails to contain "good reasons" for not crediting Dr. Fronista's opinions with controlling weight, under the treating physician, under the remaining regulatory factors.  The ALJ incorrectly focused on the quality of Dr. Fronista's explanation, saying that he "provided minimal objective support for his opinion."  *Id*.  This, however, skipped a critical question under the treating physician rule: Whether Dr. Fronista's opinion was "well-supported by clinical and laboratory diagnostic techniques ...."  20 C.F.R. §404.152(c)(2).  By not addressing this question, the ALJ weighed treating physician Dr. Fronista's opinion under the same legal criteria applicable to non-treating medical sources' opinions.  This constituted error because it directly conflicts with the different legal criteria applicable to different types of medical sources in the regulation's medical-source hierarchy.  If the ALJ meant that Dr. Fronista's opinions are not well supported by objective medical evidence or findings, the ALJ did not elaborate.  Without further elaboration, this reason for rejecting Dr. Fronista's opinion is ambiguous.  *Cf. Gayheart,* 710 F.3d at 377 ("the conclusion that Dr. Onady's opinions 'are

11

not well-supported by any objective findings' is ambiguous.  One cannot determine whether the purported problem is that the opinions rely on findings that are not objective (i.e., that are not the result of medically acceptable clinical and laboratory diagnostic techniques, *see* 20 C.F.R. § 404.1527(c)(2)), or that the findings are sufficiently objective but do not support the content of the opinions.).

Next, the ALJ's finding that Dr. Fronista's opinion is inconsistent with Plaintiff's "minimal amount of treatment" is unreasonable.  (Doc. #6, *PageID* #51).  The record reflects that Plaintiff has been taking extra-strength Vicodin daily for years.  *See id.* at 328-31, 351-56, 462-69, 606-07.  He has also undergone multiple medical-imaging and EMG tests in an attempt to help diagnose and better treat his spinal problems.  *See id.* at 316-19, 459-60, 600-05.  His doctors have told him he needs spinal fusion surgery.  *Id.* at 67, 69, 88-89, 309-10.  Plaintiff's treatment is not so "minimal" to reasonably find it "inconsistent with" Dr. Fronista's opinions.  This is especially true when the treating-physician rule's reference to "not inconsistent" evidence does not require absolute parity or support for the physician's opinions from all portions of the record.  Rather, it simply requires that other evidence does not directly contradict or conflict with the opinion.  *See* Soc. Sec. Ruling 96-2p, 1996 WL 374188, *3 (July 2, 1996) (The term "not inconsistent" is "used to indicate that a well-supported treating source medical opinion need not be supported directly by all of the other evidence (i.e., it does not have to be consistent with all the other evidence) as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion.").

12

The ALJ's final reason for rejecting Dr. Fronista's opinions – his opinions conflict with Plaintiff's daily activities – is not supported by substantial evidence.  Plaintiff correctly contends that the ALJ significantly mischaracterized or over-generalized Plaintiff's testimony.  The ALJ determined:

> [Plaintiff] testified that he is able to drive.  He can use the microwave. He can do dishes.  He mows the lawn.  He grocery shops.  He is able to bathe himself.  He helps care for two dogs.  Although he testified that he could only lift ten pounds, this is somewhat inconsistent with the ability to do yard work such as mowing.

(Doc. #6, *PageID* #50).  Although the ALJ finds that Plaintiff "is able to drive" and "can do dishes," she overlooked his testimony that his performance of these activities is significantly limited by his impairments.  He testified,  "[I]f I drive very far, my leg goes numb," and he can wash dishes "if it's just a few of them.  I don't stand there very long … 10, 15 minutes, and then I get uncomfortable."  *Id* at 71-72 .  Similarly, the ALJ's assertion that Plaintiff's lifting limitations are undermined by his "ability to do yard work such as mowing" overlooks that Plaintiff testified, "I can walk behind the mower some, but then – and that's not too much because I'll end up – my leg goes numb or I'll get a lot of pressure on me."  *Id*. at 73.  Plaintiff, moreover, did not testify that mowing required him to lift anything.  *Id*.  Perhaps most glaring, while the ALJ finds that Plaintiff "helps care for two dogs," Plaintiff did not say this.  *See id*. at 75.  He instead testified that his family owns two dogs, and he gets a sense of security from having them in the house, without mentioning who in his family takes care of them.  *Id*.  In light of these aspects of Plaintiff's testimony, substantial evidence does not support the ALJ's evaluation of Plaintiff's daily

13

activities. And, in turn, substantial evidence fails to support the ALJ's reliance on

Plaintiff's daily activities as a reason to reject Dr. Fronista's opinions.

      The Commissioner's contention that the ALJ properly relied on Dr. Kramer's

opinions about Plaintiff's mental work abilities lacks merit. The ALJ noted that Dr.

Kramer, a one-time examiner, "did not find significant limitations ..." (Doc. #6, *PageID*

#50). To the extent the ALJ credited Dr. Kramer's opinion about Plaintiff's lack of

significant mental limitations, the ALJ did so without weighing Dr. Kramer's opinions

under any of the required factors. The ALJ thus failed to apply the correct legal criteria to

Dr. Kramer's opinions. *See id*.; *see also* Soc. Sec. Ruling 96-6p, 1996 WL 374180, *2

(explaining that opinions from state agency psychological consultants and other program

psychologists can be given weight only when the factors of supportability, consistency,

specialization, and other pertinent factors are considered.).

      Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.[3]

## VI.   <u>Remand Is Warranted</u>

      A remand is appropriate when the ALJ's decision is unsupported by substantial

evidence or when the ALJ failed to follow the Administration's own regulations and that

shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial

right. *Bowen*, 478 F.3d at 746. Remand warranted by an ALJ's failure to follow the

---

[3] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's challenge to the ALJ's evaluation of Nurse McDowell's opinions, and the ALJ's use of GAF scores, is unwarranted.

regulations arises, for example, when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff to lack credibility, *Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky*, 35 F.3d at 1041. The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is weak. *Faucher v. Sec'y of Health & Humans Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A remand for an award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and because the evidence of a disability is not strong while contrary evidence is weak. *See Faucher*, 17 F.3d at 176. Yet, Plaintiff is entitled to an Order remanding this matter to the Social Security Administration pursuant to sentence four of §405(g) due to problems set forth above. On remand, the ALJ should be directed to: (1) re-evaluate the record under the legal criteria set forth in the Commissioner's Regulations, Rulings, and as required by case law; and (2) determine anew whether Plaintiff was under a disability and thus eligible for DIB.

Accordingly, the case should be remanded to the Commissioner and the ALJ for

further proceedings consistent with this Report and Recommendations.

### IT IS THEREFORE RECOMMENDED THAT:

1.    The Commissioner's non-disability finding be vacated;

2.    No finding be made as to whether Plaintiff James D. Lee was under a "disability" within the meaning of the Social Security Act;

3.    This matter be **REMANDED** to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Report and Recommendations, and any decision adopting this Report and Recommendations; and

4.    The case be **TERMINATED** on the docket of this Court.


February 12, 2016                                      _____s/ Sharon L. Ovington_____
                                                                              Sharon L. Ovington
                                                                      Chief United States Magistrate Judge

16

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).

17